IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
JUNE 18, 2001 Session

IN THE MATTER OF: T. L. P. & A. V. H., Children Under 18 Years of Age
GWENDOLYN HENDERSON v. STATE OF TENNESSEE, DEPARTMENT
OF CHILDREN'S SERVICES

Direct Appeal from the Juvenile Court for Shelby County
No. C6901; The Honorable Kenneth Turner, Judge

———————————

No. W1999-01940-COA-R3-CV - August 22, 2001

———————————

This is a suit for the termination of parental rights. The Appellee filed a petition to terminate the Appellant's parental rights to two of her children. Following a hearing, the Juvenile Court of Memphis and Shelby County entered an order terminating the Appellant's parental rights. The Appellant appeals the trial court's order terminating her parental rights. For the reasons stated herein, we affirm the trial court's decision.

Tenn. R. App. P. 3; Appeal as of Right; Judgment of the Juvenile Court Affirmed

ALAN E. HIGHERS, J., delivered the opinion of the court, in which DAVID R. FARMER, J., and HOLLY KIRBY LILLARD, J., joined.

Gregory S. Gallagher, Memphis, for Appellant

Paul G. Summers, Attorney General and Reporter; Elizabeth C. Driver, Assistant Attorney General, Nashville, for Appellee

OPINION

I. Facts and Procedural History

This case involves a petition to terminate the parental rights of the Appellant, Gwendolyn Henderson ("Ms. Henderson"), to two of her children, T. L. P. (d.o.b. February 19, 1993) and A. V. H. (d.o.b. October 7, 1994) ("the children"). On June 22, 1995, the children's maternal grandmother, Ruthie Davis ("Ms. Davis") filed a petition for dependency and neglect in the Juvenile Court of Shelby County. The petition alleged that the children had been living with Ms. Davis and that Ms. Henderson was incarcerated and a drug abuser. On July 5, 1995, the Appellee, State of Tennessee, Department of Children's Services ("DCS"), filed a motion to intervene to file its own petition for

dependency and neglect. The trial court entered an order allowing DCS to intervene as a party petitioner. The trial court proceeded with the petition on July 5, 1995. The trial court ordered the children be removed from Ms. Henderson's custody and granted temporary custody of the children to DCS.

On July 20, 1995, DCS held a staffing to develop a plan of care for the children. The plan of care required Ms. Henderson to perform the following: (1) receive substance abuse treatment with the desired outcome that she complete a substance abuse program and remain clean and sober; (2) attend parenting classes with the desired outcome that she complete a parenting program; (3) follow the guidelines of any probation or parole and refrain from breaking the law with the desired outcome that she stay out of trouble with the criminal justice system; (4) visit with the children at least four hours monthly; and (5) obtain adequate housing and maintain a stable household. On July 24, 1995, Ms. Henderson was released from prison. From January, 1996 to September, 1996, DCS provided Ms. Henderson with homemaking services, parenting classes, drug treatment, an intercept counselor, and a Memphis Housing Authority apartment. On August 6, 1996, the trial court recommended that the children remain in foster care pursuant to the recommendation of the Foster Care Review Board. In October, 1996, Ms. Henderson was evicted from her apartment by the Memphis Housing Authority. On October 8, 1996, the trial court again recommended that the children remain in foster care.

DCS claims that, in February, 1997, Ms. Henderson informed DCS that she was using drugs again and could not care for the children. On June 2, 1997, Ms. Henderson was incarcerated following drug charges. On August 5, 1997, on September 9, 1997, and on March 17, 1998, the trial court determined that it was in the best interest of the children to remain in foster care. On June 4, 1998, the trial court appointed a Court Appointed Special Advocate ("CASA") to serve as an advocate on behalf of the children. On August 26, 1998, CASA filed a petition to terminate Ms. Henderson's parental rights.[1] The petition alleged three bases for the termination of Ms. Henderson's parental rights. First, the petition alleged that Ms. Henderson willfully failed to visit and willfully failed to support the children for a period of four consecutive months immediately preceding the filing of the petition. Second, the petition alleged that Ms. Henderson failed to substantially comply with the plan of care. Third, the petition alleged that the children had been removed from the custody of Ms. Henderson for at least six months, the conditions which led to the removal of the children persisted, there was little likelihood that the conditions would be remedied at an early date so that the children could be returned to Ms. Henderson in the near future, and the continuation of the parent and child relationship greatly diminished the children's chances of early integration into a stable and permanent home. Finally, the petition alleged that termination of Ms. Henderson's parental rights was in the best interest of the children.

---

[1] The petition also sought to terminate the parental rights of Marvin Prince ("Mr. Prince"), the father of T.L.P., Steve Turnage ("Mr. Turnage"), the putative father of A.V.H., and any unknown father of the children. The trial court terminated the parental rights of Mr. Prince, Mr. Turnage, and any unknown father by default order entered December 9, 1998. None of these persons are parties to this appeal.

On February 3, 1999, the trial court appointed an attorney ad litem to represent the interest of Ms. Henderson. On February 4, 1999, the trial court appointed a guardian ad litem to represent the interest of the children. On May 19, 1999, Ms. Henderson was released from prison after serving a two year sentence. The hearing on the petition to terminate parental rights was held on June 24, 1999. The trial court entered an order terminating Ms. Henderson's parental rights. The trial court found that Ms. Henderson failed to visit and failed to support the children for four consecutive months immediately preceding the filing of the petition. The trial court found that Ms. Henderson failed to substantially comply with the plan of care. The trial court found that the children had been removed from the custody of Ms. Henderson for at least six months, the conditions which led to the removal of the children persisted, there was little likelihood that the conditions would be remedied at early date so that the children could be returned to Ms. Henderson in the near future, and the continuation of the parent and child relationship greatly diminished the children's chances of early integration into a stable home. Finally, the trial court found that termination of Ms. Henderson's parental rights was in the best interest of the children. This appeal followed.

## II. Standard of Review

Parents have a fundamental right to the care, custody, and control of their children. See Stanley v. Illinois, 405 U.S. 645, 651 (1972). This right is not absolute, however, and parental rights may be terminated upon a finding by clear and convincing evidence that the grounds for termination of parental rights have been established and that termination is in the best interest of the child. See TENN. CODE ANN. § 36-1- 113(c) (2000). Clear and convincing evidence is evidence which "eliminates any serious or substantial doubt concerning the correctness of the conclusion to be drawn from the evidence. It should produce in the factfinder's mind a firm belief or conviction with regard to the truth of the allegations sought to be established." O'Daniel v. Messier, 905 S.W.2d 182, 188 (Tenn. Ct. App. 1995) (citations omitted).

Under this heightened standard of review, we must first review the trial court's findings in accordance with section 13(d) of the Tennessee Rules of Appellate Procedure. That review is *de novo* with a presumption of correctness as to the trial court's factual findings, unless the preponderance of the evidence is otherwise. See TENN. R. APP. P. 13(d). For issues of law, the standard of review is *de novo*, with no presumption of correctness. See Ridings v. Ralph M. Parsons Co., 914 S.W.2d 79, 80 (Tenn. 1996). We must then determine whether the facts make out a clear and convincing case in favor of terminating parental rights. See In re Drinnon, 776 S.W.2d 96, 100 (Tenn. Ct. App. 1988).

## III. Law and Analysis

The sole issue presented for our review is whether the trial court's decision to terminate parental rights was supported by clear and convincing evidence. In order to terminate parental rights, the court must find by clear and convincing evidence that grounds for termination, as set forth by section 36-1-113(g) of the Tennessee Code, have been established, and the court must determine that termination is in the best interest of the child. See TENN. CODE ANN. § 36-1-113(c) (2000). As

pertinent in the case at bar, section 36-1-113(g) of the Tennessee Code provides that a termination of parental rights may be based upon any of the following grounds: abandonment pursuant to section 36-1-113(g)(1), substantial noncompliance by the parent with the statement of responsibilities in a plan of care pursuant to section 36-1-113(g)(2), or failure to remedy conditions pursuant to section 36-1-113(g)(3)(A). See TENN. CODE ANN. § 36-1-113(g)(1), (2), (3) (2000). In reviewing termination decisions, Tennessee courts have recognized that the existence of any one of these grounds will support a termination of parental rights. See In re C.W.W., N.W.W., Z.W.W., & A.L.W., 37 S.W.3d 467, 473-74 (Tenn. Ct. App. 2000) (citations omitted). In the present case, therefore, we must affirm the trial court's judgment terminating Ms. Henderson's parental rights if the record contains clear and convincing evidence to support either abandonment, substantial noncompliance with the plan of care, or failure to remedy conditions. See id. We shall address each of these grounds for termination in turn.

### Abandonment

Under the provisions of section 36-1-113(g)(1) of the Tennessee Code, termination of parental rights may be based upon a parent's abandonment of his or her child. See TENN. CODE ANN. § 36-1-113(g)(1) (2000). Section 36-1-102 of the Tennessee Code defines abandonment, for purposes of terminating parental rights, as:

> (1)(A)(i) For a period of four (4) consecutive months immediately preceding the filing of a proceeding or pleading to terminate the parental rights of the parent(s) or guardian(s) of the child who is the subject of the petition for termination of parental rights or adoption, that the parent(s) or guardian(s) either have willfully failed to visit or have willfully failed to support or make reasonable payments toward the support of the child;
> (B) For purposes of this subdivision (1), "token support" means that the support, under the circumstances of the individual case, is insignificant given the parent's means;
>
> (C) For purposes of this subdivision (1), "token visitation" means that the visitation, under the circumstances of the individual case, constitutes nothing more than perfunctory visitation or visitation of such an infrequent nature or of such short duration as to merely establish minimal or insubstantial contact with the child;
>
> (D) For purposes of this subdivision (1), "willfully failed to support" or "willfully failed to make reasonable payments toward such child's support" means that, for a period of four (4) consecutive months, no monetary support was paid or that the amount of support paid is token support;

(E) For purposes of this subdivision (1), "willfully failed to visit" means the willful failure, for a period of four (4) consecutive months, to visit or engage in more than token visitation.

TENN. CODE ANN. § 36-1-102(1)(A)-(E) (2000).

In In re Swanson, 2 S.W.3d 180 (Tenn. 1999), the Tennessee Supreme Court found the above definitions of "willfully failed to support" and "willfully failed to make reasonable payments toward such child's support" to be unconstitutional because they "in effect create an irrebuttable presumption that the failure to provide monetary support for the four months preceding the petition to terminate parental rights constitutes abandonment, irrespective of whether that failure was intentional." Id. at 188. The Swanson court held that the definition as it existed under the prior statute should be applied until the legislature amends the statute. See id. at 189. "Under the prior statute, the definition of 'abandoned child' contained an element of intent both in failures to visit and failures to support." Id. at 189 n.14 (citing TENN. CODE ANN. § 36-1-102(1)(A)(i) (Supp. 1994)).

In the case at bar, the trial court found that Ms. Henderson abandoned the children in that, for the four months immediately preceding the filing of the petition to terminate parental rights, Ms. Henderson failed to visit and/or failed to support the children. The petition for termination of parental rights was filed on August 26, 1998. Ms. Henderson was incarcerated from June 2, 1997 until May 19, 1999. Because Ms. Henderson was incarcerated during the four months immediately preceding the filing of the petition, we find the element of intent lacking in Ms. Henderson's failure to visit and/or support the children. Absent intent, we cannot uphold the termination of Ms. Henderson's parental rights on the ground of abandonment under the standard articulated by the Swanson court. Accordingly, we find that the trial court erred by terminating Ms. Henderson's parental rights on the ground of abandonment.

**Substantial Noncompliance with Plan of Care**

Under the provisions of section 36-1-113(g)(2) of the Tennessee Code, termination of parental rights may be based upon a parent's substantial noncompliance with a plan of care. See TENN. CODE ANN. § 36-1-113(g)(2) (2000). In the case at bar, DCS developed a plan of care on July 20, 1995. First, the plan of care required Ms. Henderson to receive substance abuse treatment with the desired outcome that she complete a substance abuse program and remain clean and sober. The record reflects that DCS referred Ms. Henderson to substance abuse treatment; however, we are unable to determine from the record whether Ms. Henderson completed a substance abuse program. The record reflects, however, that Ms. Henderson did not remain clean and sober. DCS claims that, in February, 1997, Ms. Henderson informed DCS that she was having problems with drug abuse. In June, 1997, Ms. Henderson was incarcerated for two years following drug charges. Second, the plan of care required Ms. Henderson to attend parenting classes with the desired outcome that she complete a parenting program. The record reflects that Ms. Henderson did comply with this requirement by attending parenting classes and completing a parenting program. Third, the plan of

care required Ms. Henderson to follow the guidelines of any probation or parole and refrain from breaking the law with the desired outcome that she stay out of trouble with the criminal justice system. The record reflects that Ms. Henderson was incarcerated in June, 1997 on drug charges. Fourth, the plan of care required Ms. Henderson to visit with the children at least four hours monthly. The record reflects that Ms. Henderson visited with the children on seven occasions between February and September, 1996. Ms. Henderson failed to visit the children from October, 1996 until June, 1997 when she was incarcerated. Ms. Henderson failed to visit the children following her release from prison in May, 1999. Fifth, the plan of care required Ms. Henderson to obtain adequate housing and maintain a stable household. The record reflects that DCS provided Ms. Henderson with an apartment; however, Ms. Henderson was evicted from the apartment shortly thereafter. Ms. Henderson was subsequently incarcerated. Following her release from prison, the record reflects that Ms. Henderson was living with her sister and nephew in a two bedroom home and had failed to obtain employment. From the foregoing evidence, we conclude that Ms. Henderson failed to substantially comply with the plan of care. Accordingly, we find that the trial court did not err by finding by clear and convincing evidence that Ms. Henderson failed to substantially comply with the plan of care.

## Failure to Remedy Conditions

Under the provisions of section 36-1-113(g)(3)(A) of the Tennessee Code, termination of parental rights may be based upon a failure to remedy conditions when

> (3)(A) The child has been removed from the home of the parent
> or guardian by order of a court for a period of six (6) months and:
> (i) The conditions which led to the child's removal or other
> conditions which in all reasonable probability would cause the
> child to be subjected to further abuse or neglect and which,
> therefore, prevent the child's safe return to the care of the parent(s)
> or guardian(s), still persist;
> (ii) There is little likelihood that these conditions will be remedied
> at an early date so that the child can be safely returned to the
> parent(s) or guardian(s) in the near future; and
> (iii) The continuation of the parent or guardian and child relationship
> greatly diminishes the child's chances of early integration into a
> safe, stable and permanent home.

TENN. CODE ANN. § 36-1-113(g)(3)(A) (2000).

We find that the elements of section 36-1-113(g)(3)(A) of the Tennessee Code have been met in the case at bar. It is undisputed that the children have been removed from Ms. Henderson's custody for over six months. The children were removed from Ms. Henderson's custody as a result of her incarceration and drug abuse. Shortly after the children were placed in foster care in July, 1995, Ms. Henderson was released from prison. DCS claims that, in February, 1997, Ms. Henderson informed DCS that she was having problems with drug abuse. Ms. Henderson was subsequently incarcerated for two years on drug charges and released shortly before the hearing on the petition for termination of parental rights. The record reflects that Ms. Henderson failed to maintain a stable household or obtain employment by the time of the hearing. Thus, the conditions which led to removal of the children still persist, and there is little likelihood that the conditions will be remedied at an early date so that the children could be safely returned to Ms. Henderson's custody in the near future. Finally, the continuation of the parent and child relationship prevents the children's integration into a permanent home. The children were nine months old and two years old at the time they were placed in foster care. The children had been in foster care for four years at the time of the hearing on the petition for termination of parental rights. The children need the stability and security of a permanent home which cannot be provided absent termination of Ms. Henderson's parental rights. Accordingly, we find that the trial court did not err by finding by clear and convincing evidence that Ms. Henderson failed to remedy the conditions which led to the removal of the children.

Termination of Ms. Henderson's parental rights is warranted under either the ground of substantial noncompliance with the plan of care or the ground of failure to remedy conditions. Furthermore, we find that the trial court did not err by finding by clear and convincing evidence that termination of Ms. Henderson's parental rights is in the children's best interests.

## IV. Conclusion

For the foregoing reasons, the decision of the trial court is affirmed. Costs of this appeal are taxed against the Appellant, Gwendolyn Henderson, for which execution may issue if necessary.

_____
ALAN E. HIGHERS, JUDGE

-7-